IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHRISTINA HUDSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-08-2471 |
| § | |
| L&W SUPPLY CORPORATION, INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

In this employment discrimination suit, Christina Hudson sues her former employer, L&W Supply Corporation, Inc., alleging discrimination based on gender and race, unequal pay, retaliation, and breach of her employment contract. L&W has moved for discovery sanctions against Hudson for cancelling a deposition that her counsel noticed two hours before it was scheduled to begin. L&W seeks to recover travel expenses incurred by its corporate representative to travel from Dallas to Houston to attend the deposition and to recover the fees its counsel incurred in preparing for that deposition. (Docket Entry No. 29). L&W also seeks to strike the deponent's affidavit that Hudson subsequently produced. (*Id.*). Hudson responded and in turn moved for sanctions against L&W for "having to respond to this frivolous and harassing Motion." (Docket Entry No. 32, at 11). Hudson asserts that the deposition was cancelled in good faith because the deponent was in an accident before the deposition was scheduled to take place . (*Id.*, at 9). Hudson argues that the motion to strike should be denied because L&W has known about the witness for months and did not try to take her deposition before the discovery deadline. (*Id.*). L&W replied, accusing Hudson's counsel of cancelling the deposition at the last minute to save litigation costs. (Docket Entry No. 34).

Based on a careful review of the pleadings, the motion, response, and reply, the parties'

submissions, and the applicable law, this court denies both motions for sanctions on the basis of the current record. The reasons are explained below.

**I.     Background**

L&W is a nationwide distributor of construction supplies. Hudson began working for L&W as a cost accountant in 1998. Between 1998 and 2004, Hudson earned promotions to the positions of staff accountant, assistant controller, and financial manager, and worked for L&W in Mississippi, Illinois, and Florida. In June 2004, Hudson was transferred to L&W's Houston office.

In her complaint, Hudson alleged that she earned less money, received less management support, and had fewer advancement opportunities than her male and white coworkers in the Houston office. (Docket Entry No. 1, at ¶ 9). Hudson alleged that when she asked her supervisor, Chad Corbitt, who is Caucasian, about promotion opportunities in August 2006, he responded that there were no promotions in Hudson's foreseeable future. According to Hudson, Corbitt also stated that the ideal female candidate for financial manager would be a middle-aged woman with grown children because she would be settled in her career with no career advancement aspirations. (*Id.*, at ¶ 10). Hudson alleged that Corbitt made other derogatory comments about women in the workplace.    In September 2006, Hudson applied for a financial-manager position in the Boca Raton, Florida office. Corbitt learned about Hudson's application and, "over Hudson's objection," spoke with the manager who was considering the application. (*Id.*, at ¶ 13). On October 12, 2006, Corbitt told Hudson that if she declined the Florida position and stayed in Houston, she would receive "everything that was offered in Florida." (*Id.*, at ¶ 14). On November 6, 2006, Hudson withdrew her name from consideration for the Florida financial-manager position and continued to work in Houston. In her complaint, Hudson alleged that she did not receive the promotion to

financial manager as Corbitt promised and that white and male coworkers of similar tenure were promoted to financial-manager positions on January 1, 2007. Hudson also alleged that her duties and responsibilities were increased; she was not given the same amount of staff assistance as her white and male counterparts; and she was denied the opportunity to work from home. Hudson complained to her superiors in early 2007 that she had been discriminated against based on her sex and race.

On March 8, 2007, Hudson received a performance appraisal and development plan that stated "no promotions available" and rated Hudson's job performance as "average." (*Id.*, at ¶ 24). After Hudson objected to the appraisal, Corbitt changed the development plan to state that Hudson was "promotable to [financial manager] if we create one." (*Id.*). In her complaint, Hudson alleged that Corbitt told her that L&W was looking to fire a female employee and then said, "Oops, I let the cat out of the bag." (*Id.*, at ¶ 25). Hudson complained to Human Resources because she "feared her job was in jeopardy." (*Id.*, at ¶ 26).

According to Hudson, L&W "finally granted [her] some concessions as previously promised but took many more away." (*Id.*, at ¶ 27). Hudson was promoted to area financial manager. Her job responsibilities included handling sensitive and confidential documents, including payroll information, bonus plans and payouts, and financial reporting statements and analysis. Hudson also conducted audits, assisted in inventory counts, and provided accounting or human resources training. Hudson alleged that after she received the promotion to area financial manager, Corbitt "avoided speaking with [her] or acknowledging her title and position but went around [her] to speak with her subordinates." (*Id.*). Hudson alleged that the discrimination, retaliation, and failed promises took a toll on her health. On August 8, 2007, she was "forced to tender her resignation." (*Id.*, at ¶ 29).

Hudson gave two weeks' notice of her resignation. One day before she was scheduled to leave, she was abruptly told that it was her last day at L&W, instructed to "back up everything off of [her] computer," and escorted out of the office. (Docket Entry No. 30, Ex. J, Affidavit of Christina Hudson, at ¶ 11).

Hudson filed this lawsuit on August 12, 2008, alleging discrimination based on sex and race, unequal pay, retaliation, and breach of her employment contract. On November 7, 2008, this court entered a scheduling order that, among other things, set May 15, 2009 as the discovery deadline. (Docket Entry No. 12). On November 13, 2008, Hudson sent her initial disclosures to counsel for L&W. The disclosures listed Angela Bozeman as a person with relevant knowledge. (Docket Entry No. 32, Ex. A). Bozeman and Hudson had worked at L&W at the same time. Bozeman is no longer an L&W employee.

On March 23, 2009, Hudson's counsel spoke with Bozeman, who indicated that she had already been contacted by L&W about this lawsuit. Bozeman told Hudson's counsel that she would provide an affidavit about the work environment at L&W while she worked there, including statements about sexist attitudes. L&W's Center Operations Manager, Robert Sims, confirmed in his deposition that he had spoken with Bozeman at the request of L&W's counsel. On April 1, 2009, Hudson's counsel told L&W's counsel that she wanted to depose Bozeman and asked whether L&W could produce Bozeman for a deposition sometime in April. (Docket Entry No. 32, Ex. D). L&W's local counsel responded that she would be "covering this deposition" but that Bozeman "is not under our control so we cannot produce her." (*Id.*).

After some disagreements and difficulties scheduling various depositions during April, the parties attempted to schedule the remaining depositions shortly before the May 15, 2009 discovery

4

deadline. On May 7, 2009, Hudson noticed Bozeman's deposition for May 12, 2009 at 2:00 p.m. (Docket Entry No. 29, Ex. A). At 4:59 p.m. on May 11, 2009, L&W noticed the deposition of Dr. Sheila Schmidt, Hudson's physician, for May 12, 2009 at 9:30 a.m. (Docket Entry No. 32, Ex. G). Despite the short notice, Dr. Schmidt's deposition took place as scheduled.

At 11:59 a.m. on May 12, Hudson's counsel notified L&W's counsel that Bozeman's deposition – scheduled for 2:00 that afternoon – was cancelled. (Docket Entry No. 29, Ex. C). In response to L&W's motion for sanctions for this late notice of cancellation, Hudson's counsel submitted an affidavit stating that during one of their phone conversations, Bozeman "mumbled that she had just been in an accident." (Docket Entry No. 32, Ex. B). According to Hudson's counsel, Bozeman "appeared rattled and distracted so I quickly and apologetically ended the call so that she could tend to the occurrence." (*Id.*). Hudson's counsel stated that she cancelled Bozeman's deposition "primarily out of consideration for this witness and to save my client some litigation expenses." (*Id.*). She explained that L&W had expressed no interest in seeking discovery from Bozeman other than to attend the deposition Hudson had noticed. (*Id.*).

In anticipation of a motion for summary judgment by L&W, Hudson asked Bozeman to submit an affidavit to be used in support of Hudson's opposition to such a motion. Hudson sent Bozeman's affidavit to L&W on May 14, 2009. L&W argues that this court should strike Bozeman's affidavit because its own counsel was unable to question her in a deposition before the discovery deadline. L&W argues that this court should order Hudson to pay the fees its counsel incurred in preparing to cross-examine Bozeman in the deposition that Hudson's counsel noticed and cancelled, as well as the travel expenses L&W's corporate representative incurred in driving from Dallas to Houston on May 12 to attend the deposition.

**II.     Analysis**

Rule 30(g) of the Federal Rules of Civil Procedure provides in part that "[a] party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to . . . attend and proceed with the deposition[.]" FED. R. CIV. P. 30(g).  "Courts allow the award of attorney's fees and expenses where the party noticing the deposition fails to attend and does not deliver sufficient notice of cancellation to the other." *Root Brothers Farms v. Mak*, No. 05 Civ. 10863, 2007 WL 2789481, at *7 (S.D.N.Y. Sept. 25, 2007) (quotation omitted).  The rule is discretionary.  As with other  sanctions, "the court should consider all the circumstances, such as whether the failure was inadvertent or in bad faith." *Barrett v. Brian Bemis Auto World*, 230 F.R.D. 535, 537 (N.D. Ill. 2005).

The record does not provide a basis to find bad-faith, sanctionable conduct by counsel for Hudson.  It is true that cancelling a deposition two hours before the scheduled time was insufficient notice to L&W to avoid preparation and travel costs.  Courts have awarded sanctions for last-minute deposition cancellations when there was no explanation provided.  *See*, *e.g.*, *Edmonds v. Seavey*, 2009 WL 1285526, at *3 (S.D.N.Y. May  5, 2009) (granting motion for sanctions for a cancelling a deposition scheduled for a Monday  morning by leaving a voicemail late the evening before); *Weatherspoon v. Nissan North America*, *Inc.*, No. 3:07 CV 24, 2008 WL 5104234, at *2-3 (S.D. Miss. Dec. 1, 2008) (granting sanctions under Rule 30(g) when a party cancelled a deposition the day before it was scheduled); *Root Brothers Farms*, 2007 WL 2789481, at *8 (granting a motion for sanctions under Rule 30(g) because the party cancelled a Monday deposition by leaving a voicemail on Saturday and with no reasonable expectation that messages would be monitored over weekend).

Sanctions were granted in these cases because the party who cancelled the deposition failed to provide a sufficient explanation for the last-minute notice. *See*, *e.g.*, *Edmonds*, 2009 WL 1285526, at *3 (finding the plaintiff's explanation for the late notice – that he had been deprived of documents – was "meritless" because there was no showing that the documents were relevant to the deposition); *Weatherspoon*, 3:07 CV 24, 2008 WL 5104234, at *2-3 (finding sanctions appropriate because the last-minute cancellation was based on objections to the topics noticed for deposition; the deposition could have proceeded and objections could have been brought to the court's attention); *Root Brothers Farms*, 2007 WL 2789481, at *7 (finding sanctions appropriate because the defendants "failed to provide sufficient justification for their last-minute cancellation").

In this case, Hudson's counsel has provided an explanation for canceling Bozeman's deposition so late. The explanation is that Bozeman had been in an accident. L&W asserts that Hudson's counsel's explanation that Bozeman was in an accident is a post-hoc rationale for the cancellation. Hudson's counsel did not mention the accident on May 12 when the deposition was cancelled or on May 18, 2009 during a premotion discussion between counsel. L&W notes that the affidavit of Hudson's counsel does not mention when the phone call with Bozeman occurred. L&W asserts that the real reason for the last-minute cancellation was a decision to save Hudson litigation costs.

The current record does not show when Bozeman's accident occurred or when Hudson's counsel learned of that accident. The record does not permit this court to determine whether Hudson's counsel cancelled the deposition because of the accident or for some other reason. Based on the current record, this court cannot conclude that the actions of Hudson's counsel show bad faith or an intent to cause unnecessary preparation or travel expenses. And the primary sanction sought,

7

the attorney's fees L&W incurred in preparing to depose Bozeman, assumes that such work is wasted. That assumption does not appear to be justified. The preparation of L&W's counsel for Bozeman's canceled deposition will be useful if the deposition is renoticed, if her affidavit is used in opposition to a summary judgment motion by L&W, or if Bozeman testifies at trial. L&W's motion for monetary sanctions is denied.

L&W's motion to strike Bozeman's affidavit is also denied. L&W has been aware that Bozeman was a person with relevant knowledge since November 2008, but L&W did not seek to obtain an affidavit or statement from her. Given the circumstances, L&W may depose Bozeman, before August 28, 2009.

Hudson's motion for sanctions against counsel for L&W for seeking sanctions against Hudson is denied. When L&W filed the motion, its counsel was not aware that Bozeman had been in an accident. It does not appear that there was any explanation provided for the deposition cancellation when it occurred or that the accident was mentioned during the premotion conference on May 18, 2009. There is no basis to conclude that L&W filed the motion for discovery sanctions in bad faith.

## III.    Conclusion

Based on the current record, the cross-motions for sanctions are denied. L&W may depose Bozeman before August 28, 2009.

SIGNED on July 2, 2009, at Houston, Texas.

_____
                    Lee H. Rosenthal
                    United States District Judge